THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THERESA HILL<br><br>    Plaintiff,<br><br>V.<br><br>SBC/SOUTHERN NEW ENGLAND<br>TELEPHONE (SNET) DISABILITY<br>BENEFITS PLAN<br><br>    Defendant. | CIVIL ACTION NO.: 3:03CV00004 (JCH)<br><br>JUNE 1, 2004 |

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.  PRELIMINARY STATEMENT**

The only relevant inquiry on the pending summary judgment motion is whether the plaintiff has established that there is a genuine issue of material fact that the SBC/Southern New England Telephone (SNET) Disability Benefits Plan Committee (the "Committee"), as the Plan Administrator, through its designee, the SBC Medical Absence and Accommodations Recourse Team ("SMAART"), acted arbitrarily and capriciously when it found her ineligible for disability benefits for the limited period from February 9, 2002 to March 18, 2002.[1]

---

[1] Plaintiff's complaint specifically claims wrongful denial for the period February 9, 2002 through March 18, 2002. At no time during this proceeding has plaintiff attempted to amend her Complaint to expand the period through May 22, 2002 that she mentions in her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment dated May 10, 2004 ("Opposition"). Plaintiff cannot resist summary judgment by asserting in her Opposition factual claims that were never pled in the case, particularly where the facts are as central to the claim as the period of time for which she claims she was wrongfully denied benefits. See Exhibit I attached to Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment ("Appendix") (the initial denial encompassed the period until her "return to work"); see Exhibit N attached to Appendix at 3 (the appeal addressed the period "beyond February 8, 2002" and included the period "from February 9, 2002 through March 18, 2002").

Plaintiff has in fact admitted that the medical information provided to SMAART in 2002 with respect to her application for disability benefits after February 8, 2002 did not support the claimed disability.[2] See SBC's Amended Local Rule 56(a)(1) Statement Submitted in Support of Motion for Summary Judgment dated April 23, 2004 ("Defendant's Statement") at ¶ 4, and Plaintiff's Response to Defendant's Local Rule 56(a)(1) Statement of Material Facts Not in Dispute ("Plaintiff's Response"). The only reasonable conclusion from this admission is that the defendant's decision to deny benefits based on the information provided to it was not an abuse of discretion because it was not arbitrary and capricious.

## II.  ARGUMENT

In an attempt to complicate and confuse this very simple case, the plaintiff has offered a novel theory that, although the Administrator's decision may have been correct when made and during the appeal period, SMAART was somehow later obligated to "cure" the March 2002 denial of benefits based on medical information submitted by plaintiff in support of a new application for disability benefits for a mental health disability <u>in January 2003</u>, ten months later.[3] See Plaintiff's Responses at ¶ 3, p.5; Plaintiff's Opposition at 5-6.

### A.  <u>No Reasonable Fact-Finder Could Conclude that the Plan Required the Defendant to Change the March 2002 Denial Based on Medical Information Submitted in January 2003 for a New Claim</u>.

Plaintiff concedes that the SNET Disability Benefits Plan (the "Plan") unambiguously confers "sole

---

[2] Plaintiff contends that whether she submitted adequate medical documentation to the defendant to support her claim for disability benefits is a material fact in dispute. See Plaintiff's Response at p. 5. However, the plaintiff has admitted the same statement as a material fact <u>not</u> in dispute. See Defendant's Statement at ¶¶ 4, 7, 10, 11, 20, 21, 26, 28, 30, 32- 37, 39, 40, 43-45, 47, 49, 50-52, 54, 56, 58-64 and plaintiff's responses thereto. An issue of fact is not created by merely asserting inconsistent positions with respect to a particular fact.

[3] The psychiatric disability claim for which plaintiff has been receiving benefits since January 2003 is not at issue in this lawsuit but involved a separate claim. See Exhibit G at 332 lines 17-25 and 333 lines 1-10.

and complete" discretionary authority on the Plan Administrator and its designees to construe the terms of the Plan to determine eligibility. See Defendant's Statement at ¶¶ 16 and 17 and plaintiff's responses thereto. The plaintiff has also admitted that the Plan establishes clearly that "any decision . . . shall be conclusive and binding on all parties and not subject to further review"(emphasis added). Id. at ¶¶ 14 and 17 and plaintiff's responses thereto. Plaintiff merely asserts, without basis, that SMAART should have considered information she submitted in the context of a different claim more than ten months later and changed its decision with respect to her claim for total disability during the period February 9 - March 18, 2002. See Plaintiff's Opposition at 5.

Plaintiff has failed to identify any provision in the Plan that could even arguably create such an obligation -- there is no such provision -- and plaintiff has not submitted a scintilla of evidence to support her theory or to create an issue of fact that such an obligation existed on the part of the defendant. No reasonable fact-finder could conclude that there is a genuine issue of material fact that the Plan created an obligation for SMAART to revisit and "cure" (as plaintiff puts it) the March 2002 denial of benefits for the period February 9 - March 18, 2002, ten months after the fact -- it clearly does not.

### B. The Administrator's Decision Was Reasonable Based on the Administrative Record.

The law is clear that the Court's review of the Administrator's decision to deny benefits is limited to whether the administrator's decision was reasonable based on the administrative record.

The plaintiff claims two reasons why SMAART was allegedly obligated to re-open its March 2002 denial of benefits more than ten months later in and after January 2003. First, her counsel baldly asserts that there was a "probable" causal connection between the plaintiff's physical symptoms in March 2002[4] and

---

[4] Directly contradicting her argument that she now believes she may have been disabled from working from February 9 - March 18, 2002 for psychiatric reasons, plaintiff also asserts that she did not return to work until May 22, 2002 "because of her continued vomiting and diarrhea. See Plaintiff's Opposition at 2. Her discomfort from gastrointestinal symptoms was the basis for

3

the new psychiatric symptoms that later qualified her for disability benefits in January 2003. Plaintiff's Opposition at 5. Plaintiff has not submitted any evidence to support this conclusion and there is none. See Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (conclusory statements are insufficient to raise an issue of fact).

Second, plaintiff asserts that the Administrator's decision in March 2002 to deny benefits was arbitrary and capricious because the mental health "condition" that formed the basis for granting her disability starting in January 2003, was, according to him, a "similar condition" to the one that Augustus Pullen was purportedly treating her for in February and March 2002. Plaintiff has submitted two FMLA Certificates of Health Care Provider ("Certificates") in support of this claim. However, this claim is meritless, unsupported by the Administrative Record, and does not create an issue of material fact.

1. **The FMLA Documents Are Not Part of the Disability Administrative Record and Were Not Submitted to SMAART at any Time.**

Plaintiff has conceded that the administrative record consists of the records and reports identified in SMAART's March 22, 2002 denial letter.[5] See Defendant's Statement at ¶ 39 and plaintiff's response

---

the disability benefits she claimed and was granted through January 31, 2002 and for her claimed relapse through February 8, 2002. In fact, the additional week of benefits was granted through February 8, 2002 exactly because, during that week, she had seen Dr. Goman for stomach symptoms and Dr. Goman recommended plaintiff see a gastroenterology specialist, Dr. Blam. Plaintiff saw Dr. Blam on February 6, 2002. See Exh. 1, Case notes at 0096. None of the record has anything to do with a psychiatric disorder.

[5] The Administrative Record consists of the following: (1) an office visit note dated January 31, 2002 from Elizabeth Goman, M.D. (Exhibit N attached to Appendix); (2) treatment notes dated February 4, 2002 through March 5, 2002 and a letter dated March 7, 2002 from Augustus Pullen, LCSW (Exhibit O attached to Appendix); (3) an office visit note dated February 6, 2002 from Michael Blam, M.D. (included in Exhibit P attached to Appendix); (4) a letter dated February 25, 2002 from Barr Forman, M.D. (Exhibit Q attached to Appendix); (5) an ultrasound report dated February 14, 2002 from Whitney Imaging Center, LLC (Exhibit R attached to Appendix);(6) laboratory reports dated February 14, 2002 and February 18, 2002 from Quest Dagnostics (Exhibit S attached to Appendix); and, (7) a list of prescriptions dated January 8, 2002 through February 18, 2002 (Exhibit T attached to Appendix). See Exhibits M and Y attached to Appendix.

4

thereto. The Certificates are Family and Medical Leave Act ("FMLA") Eligibility Forms and are not part of that record. They were never submitted to the defendant or SMAART. Plaintiff apparently submitted the FMLA forms attached to her Opposition at some point to SBC Services, Inc.'s FMLA Claims Processing Unit to support a claim for FMLA benefits. See Affidavit of Bonnie Sheppert dated May 19, 2004 attached hereto as Exhibit 2 (documents submitted in connection with FMLA applications are confidential and not shared with SMAART, which operates independently from FMLA Processing Unit). In addition, the Certificates are dated March 26, 2002 and April 25, 2002, respectively, well after the denial of disability benefits and after the appeal decision. See Exhibit 5 attached to plaintiff's memorandum. The plaintiff does not contend and does not provide any evidence that she or anyone on her behalf submitted the FMLA Eligibility Forms to SMAART or the defendant at any time. In fact, she did not. See Affidavit of Terry Harris filed on May 11, 2004 at ¶ 9 (identifying all the documents submitted as part of plaintiff's disability claim, which list does not include an FMLA Certificate, and attesting that these were the only documents submitted, thus comprising the administrative record). The FMLA Processing Unit did not and would not have provided the Certificates to SMAART for any purpose. See Exhibit 2. The Certificates are not part of the administrative record and, accordingly, were properly not reviewed by SMAART. See Dunn v. Standard Ins. Co., 156 F. Supp. 2d 227, 231, n.2 (D. Conn. 2001) (defendant only required to review reports regarding plaintiff's claim for disability that were available at time the decision was made). Because the plaintiff did not submit the FMLA Certificates (whose purpose was apparently to apply for FMLA leave with a completely different department of SBC) to the Claims Administrator as part of her disability claim, it was not part of the administrative record and therefore is irrelevant and admissible and cannot be used to resist summary judgment in this case.[6]

---

[6] Because the FMLA forms should not be considered by the Court on SBC's Motion for Summary Judgment, the defendant respectfully requests that the documents be stricken from the record in this case.

### 2. The Plan Administrator's Decision is Limited to the Evidence in the Administrative Record.

The Second Circuit Court of Appeals has adopted the majority view that a District Court's review of a plan administrator's decision is limited to the evidence in the administrative record. To further the goal of ERISA to attain "prompt resolution of claims by the fiduciary," the majority of circuits limit a District Court's review to the administrative record. Miller v. United Welfare Fund, 72 F. 3d 1066, 1071 (2d Cir. 1995) (citing Perry v. Simplicity Eng'g, 900 F. 2d 963, 966 (6th Cir. 1990)); Dunn, 156 F. Supp. 2d at 231, n.2. "This rule is consistent with the fact that nothing 'in the legislative history [of ERISA] suggests that Congress intended that federal courts would function as substitute plan administrators.'" Id; see also Lee v. Blue Cross/Blue Shield, 10 F. 3d 1547, 1550 (11th Cir. 1994) (courts required "to look only to the facts known to the administrator"); Taft v. Equitable Life Assurance Society, 9 F. 3d 1469, 1471-72 (9th Cir. 1993) (rule recognizes that examination beyond the administrative record would too easily lead to findings of abuse of discretion, defeating ERISA goal to resolve disputes expeditiously); Abnathya v. Hoffman-LaRoche, Inc., 2 F. 3d 40, 48 n.8 (3d Cir. 1993); Sandoval v. Aetna Life & Casualty Ins. Co., 967 F. 2d 377, 380-81 (10th Cir. 1992); Oldenburger v. Central States Pension Fund, 934 F. 2d 171, 174 (8th Cir. 1991); Perry, 900 F. 2d at 966 (neither de novo nor arbitrary and capricious standards of review "mandate or permit the consideration of evidence not presented to the administrator.").

Here, plaintiff had every opportunity, both before the initial decision on February 11, 2002, (Exh. I in Appendix) and during the appeal period through March 22, 2002 (Exh. M. in Appendix), to provide any documentation she wished to support her claim of total disability. She never provided any documentation from any physician or caregiver that she was unable to work. This is despite the fact that on February 12, 2002, the Administrator's designee wrote to her reviewing the definition of disability and making it crystal clear that, "For this reason and because the decision of the Quality Review Unit is final,

6

this is your <u>final</u> opportunity (if you have not already done so) to submit any additional clinical documentation (diagnostic test results, lab results, x-rays, doctor's office notes, etc.) that was not submitted with your original claim by March 9, 2002." (Exh. K in Appendix) In fact, she admits that she did not submit medical documentation that would support her claim for disability benefits. <u>See</u> Defendant's Statement at ¶ 4 and plaintiff's response thereto. As a matter of law, the Court can <u>only</u> consider those records and reports contained in the administrative record that were reviewed by SMAART in deciding the sole issue in this matter, i.e., whether, based on that record, the decision was a clear error of judgment. <u>Dunn</u>, 156 F. Supp. at 231, n.2. Those records simply contained no basis for SMAART to conclude that plaintiff was "too sick to perform any type of work." <u>See</u> Defendant's Statement at ¶ 21.

### C. <u>Plaintiff Has Produced No Evidence that SMAART's Decision was Arbitrary and Capricious</u>.

As set forth in SBC's Memorandum of Law in Support of Motion for Summary Judgment dated April 19, 2004 ("Summary Judgment Motion"), the "arbitrary and capricious" standard is highly deferential to the Plan Administrator's decision. To avoid summary judgment where, as here, this deferential standard applies, a plaintiff must present admissible, probative evidence that the Plan Administrator's decision to deny benefits based on the administrative record before it was a "<u>clear error in judgment</u>" and "<u>without reason, unsupported by substantial evidence or erroneous as a matter of law</u>." <u>Dunn</u>, 156 F. Supp. 2d at 236 (emphasis added); <u>Jordan v. Retirement Comm. of Rensselasr Polytechnic Inst.</u>, 46 F. 3d 1264, 1271 (2d Cir. 1995). "The Supreme Court has held that only a rational connection between the facts found and the decision made is required." <u>Glavan v. Building Service 32B-J Health Fund</u>, 1997 WL 381789 *2 (S.D.N.Y.) (copy attached) (citing <u>Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.</u>, 419 U.S. 281, 285-86 (1974)).

Since the plaintiff admits that the claims reviewer reviewed all the documents that were submitted,

7

including Mr. Pullen's records through March 7, 2002, and that none of her health care providers certified that she was disabled during the relevant time period, there can be no genuine issue that SMAART made a "clear error in judgment" or a decision that was "erroneous as a matter of law." Certainly under these circumstances, no reasonable factfinder could conclude that the Administrator capriciously failed to consider relevant documentary information or to make a reasonable decision.

### D.   The Administrative Record Does Not Establish that Plaintiff was Certified as Disabled from Working as Required by the Plan.

The Plan defines "disability" as "when you are too sick to perform any type of work." Defendant's Statement ¶ 21 and plaintiff's response thereto. According to the Plan language, an eligible employee will continue to receive disability benefits as long as she continues to be "<u>certified</u> as totally disabled and unable to work." Defendant's Statement at ¶ 11 (emphasis added). Not even the plaintiff contends that Mr. Pullen or anyone else certified her as disabled from working during the relevant period, February 9 - March 18, 2002. See Plaintiff's Opposition at 5 ("<u>As of March 22, 2002</u>, Augustus Pullen . . . advised the SMAART personnel . . . that Ms. Hill had reported that she was unable to sleep, had no energy and had no appetite. He reported that she was exhibiting symptoms of major depression."). In fact, plaintiff has repeatedly conceded in this case that none of her health care providers, including Mr. Pullen, certified that she was disabled from work during the period February 9, 2002 through March 18, 2002. See Defendant's Statement at ¶¶ 4 and 7 and plaintiff's responses thereto; Exhibit G of Appendix at 113, 70, 244 (Hill Dep.).[7]

---

[7] The plaintiff testified as follows:

> Q. . . . Does anywhere in the letter [March 7, 2002] Mr. Pullen say that the condition he refers to or any condition he refers to prevents you from performing the duties of your job, with or without reasonable accommodations?
> A. Not this letter, but the other one does.
> Q. And what other one would that be?
> A. Exhibit - - this one (indicating). Both of those exhibits (indicating) say it.

8

The analysis for the Court is *not* whether Mr. Pullen's records indicate that the plaintiff had some depression in February and March 2002, but whether plaintiff provided defendant with certification that she was disabled from working within the meaning of the Plan as a result of any noted depression. Many cases involving disability benefits claims have concluded that employees who have depression are nonetheless able to work and do not qualify for disability benefits. See Mormile v. Metropolitan Life Ins. Co., 91 F. Supp.2d 492 (D. Conn. 2000) (although claimant initially received disability leave benefits based on recurrent major depression, medical evidence did not indicate that condition continued to prevent him from performing occupation beyond initial disability period, and it was reasonable to deny benefits for subsequent period); Todd v. Aetna Health Plans, 62 F. Supp.2d 909(1999) (court granted defendant's motion for summary judgment despite plaintiff's claim that Aetna's denial of benefits was arbitrary and capricious because plaintiff's documents submitted on appeal demonstrated she had a "growing mental disability"); Brassord v. Continental Casualty Co., 630 F. Supp. 951, 955 (D. Conn. 1986) (Court granted defendant's motion for summary judgment although disability claimant's physician testified at deposition she was depressed, was prescribed antidepressant medication, and was advised to take some time off work, since evidence was not "unequivocal" that claimant was disabled within pension plan definition of disability); see also Jones v. Unumprovident Corp., 2002 WL 32136676 (D. Conn.) (Social Security Administration determination of "disability" based on, inter alia, depression not binding on Plan Administrator under ERISA) (copy attached). Based on the above cases, even if plaintiff in this case had submitted evidence of depression during the period February 9 - March 18, 2002, and such evidence was part of the administrative record --

---

> Q. And you're referring to Exhibits 3 and 4?
> A. Yes.
> Q. And would you agree that the dates of those documents are dated march 26, 2002 and April 25, 2002?
> A. Yes, it is. but - -

Exhibit G of Appendix, (Hill Dep.) at 113.

9

which was clearly not the case here -- it still would not have been capricious or a "clear error in judgment" for the defendant to conclude that she was not qualified for disability benefits within the terms of the SBC Plan.

Plaintiff's reliance on <u>Sweeney v. NFL</u>, 961 F. Supp. 1381 (S.D. Cal. 1997) is misplaced. <u>See</u> Plaintiff's Opposition at 5-6. <u>Sweeney</u> is not only factually dissimilar, but the Ninth Circuit <u>reversed</u> the District Court's holding in the <u>Sweeney</u> case cited by the plaintiff. While the District Court found that the Retirement Board ("Board") had abused its discretion for failing to award football disability benefits for periods from 1976 to 1984 and from 1990 forward, the Appellate Court found that the records had <u>not</u> supported a "definite and firm" conviction that the Board had erred when it denied disability. <u>See Sweeney v. Bert Bell NFL Player Retirement Plan</u>, 156 F. 3d 1238 (9th Cir. 1998). Recognizing that it was possible to draw different conclusions from the evidence, the Court held that the Board's determination was reasonable and supported by substantial evidence. <u>See Sweeney v. Bert Bell NFL Player Retirement Plan</u>, 156 F. 3d 1238 (9th Cir. 1998).

It is beyond dispute that neither Mr. Pullen nor any other health care provider certified that the plaintiff was "totally disabled and unable to work"[8] due to depression or for any other reason during the period February 9, 2002 through March 18, 2002.

---

[8] Mr. Pullen's notes of February 4, 2002 that were provided to SMAART reflect Mr. Pullen's observation that the plaintiff was depressed about "health issues" and that she had "no energy." The February 21, 2002 note reports that the plaintiff was concerned about depression and indicated that he recommended that she see a physician for "another opinion." <u>Id</u>. The March 5, 2002 notes report that the plaintiff was concerned about her thyroid condition and that she "wants to watch her appetite and sleeping." <u>Id</u>. Mr. Pullen's March 7, 2002 letter to the Review Unit stated that she was experiencing some depression and that there may be "a correlation between her present medical diagnosis and the depression symptom she is experiencing psychologically." <u>Id</u>. That is all Mr. Pullen communicated to SMAART with regard to the relevant period.

Dated at New Haven, Connecticut this 1st day of June, 2004.

> THE DEFENDANT
> SBC/SOUTHERN NEW ENGLAND
> TELEPHONE (SNET) DISABILITY
> BENEFITS PLAN
>
> By _/s/ Lori B. Alexander_
> Lori B. Alexander  CT08970
> Regina Duchin Kraus  CT08873
> Tyler Cooper & Alcorn, LLP
> 205 Church Street
> P.O. Box 1936
> New Haven, CT 06509-1910
> Telephone: 203-784-8200
> Fax: (203) 865-7865
> Email: kraus@tylercooper.com

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed first class mail, postage prepaid, to the following counsel and pro-se parties of record this 1st day of June, 2004.

John R. Williams
Katrena Engstrom
Williams and Pattis, LLC
51 Elm Street
New Haven, CT  06510

_____
Lori B. Alexander
Federal Bar No. CT08970

# EXHIBIT 1

```
-------------------------------------------------------------------------
;001186-0001-02 02/07/2002 MD TLOVE
                           Received into the SMAART from Dr Goman 1/31
                           OVN.  Given FDA 2/1, OVN from 1/31 is not
                           pertinent to this claim.


                           DDG(787):  (0 to 3 days).  Medical does not
                           support the established DDG.
```

SNET 0095

```
3/21/2003  2:03pm                User: chenelft                    Page:       9
==========================   =============================      ==============
Number : A225001186-0001-02                         Date Loss : 01/04/2002
       : 1632        - SBC Communications, Inc.
nt     : 16320400    - E7 - Southern New England Telephone Comp
       : E7039       - SNET
nant   : HILL, THERESA
================================================================================

------------------------------- NOTES ------------------------------------------

:/Clmnt/Claim   Date        Tp Examiner
--------------  ----------  -- ------------------------------------------------
                            RATIONALE:  Approval secondary to EE's
                            complaints of nausea, requiring evaluation by
                            GI specialist.  1/31 OVN documents EE's
                            complaints of continued nausea and fatigue; at
                            EE's request, MD prescribed trial of
                            antibiotics (z-pak) and MD instructed EE to c/b
                            upon completion of same.  MD referred EE to GI
                            specialist, when antibiotics did not resolve
                            EE's complaints.  EE reports OV on 2/6 w/
                            specialist, who advised that EE has viral
                            infection, which has to run it's course; EE
                            also reports that GI specialist told her to see
                            how she feels in 2 wks re: RTW.  File discussed
                            with BUM, and it was agreed that it is
                            reasonable to extend 8 days of benefits, given
                            EE had OV with PCP and GI specialist;
                            additional medical information is required to
                            demonstrate EE's inability to perform her job
                            w/ or w/o accommodations beyond the 8 day
                            extension.
--------------------------------------------------------------------------------
01186-0001-02 02/07/2002 BA TLOVE
                            BA 2/1 - 2/8
--------------------------------------------------------------------------------
01186-0001-02 02/07/2002 AP TLOVE
                            1. Notify EE of BA 2/1 - 2/8; EE is required to
                            submit additional, updated medical information
                            to support continued impairment
                            2. Send approval notifications
                            3. If RTW, close claim
                            4. If no RTW, begin denial process
--------------------------------------------------------------------------------
01186-0001-02 02/07/2002 ST TLOVE
                            To CA for email & ltr processing
--------------------------------------------------------------------------------
01186-0001-02 02/07/2002 CM TLOVE
                            12:30PM  Placed call to EE.  CM explained to EE
                            the following:  1--confirmed receipt of medical
                            info, which has been reviewed; 2--CM also
                            discussed claim with BUM; 3--BA 2/1-2/8;
                            approval ltr to follow;  4--unable to extend
                            benefits beyond 2/8, as the medical info does
                            not support EE's inability to perform job w/ or
                            w/o accommodations; CM explained medical info
                            received from Dr Goman and CM explained medical
                            info EE reported from OV w/ specialist; this
                            information does not support extension of
                            benefits for 2 wks.  EE asked what is she
```

SNET 0096

**EXHIBIT 2**

THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THERESA HILL                              :
                                          :
    Plaintiff,                            :
                                          :
                                          :   CIVIL ACTION NO.: 303 CV 4 (JCH)
V.                                        :
                                          :   MAY 27, 2004
                                          :
SBC/SOUTHERN NEW ENGLAND                  :
TELEPHONE (SNET) DISABILITY               :
BENEFITS PLAN                             :
                                          :
    Defendant.                            :

### AFFIDAVIT OF BONNIE SHEPPERD

I, Bonnie Shepperd, being duly sworn, deposes and says:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I have personal knowledge of the facts set forth in this Affidavit.

3. I am an employee of SBC Services, Inc. ("SBC") and administer claims under the Family and Medical Leave Act ("FMLA") for SBC's FMLA Claims Processing Unit in San Antonio, Texas.

4. I am currently Associate Director of FMLA Case Administration.

5. In March 2002, the FMLA Claims Processing Unit handled FMLA claims for SNET.

6. I am familiar with the SBC Medical Absence and Accommodations Recourse Team ("SMAART"). The FMLA Claims Processing Unit and SMAART operate independently, manage different types of claims and do not share information regarding employee claims.

7. All documents associated with a claim for FMLA protection are submitted to the FMLA Claims Processing Unit only. Such documents are considered confidential and are not

distributed to any other SBC department, including to SMAART, for any purpose, because we are subject to the rules of confidentiality established by state and federal law.

*Bonnie Shepperd*
**BONNIE SHEPPERD**

Signed and sworn to me this 27th day of May, 2004.

*Patricia G. Hernandez*
**NOTARY PUBLIC**

[Notary Seal: PATRICIA G. HERNANDEZ, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 07-01-2005]